IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

NATHANAEL KEITH,                )
                                )
    Petitioner,                 )
                                )
                                )    CIV-13-1153-M
v.                              )
                                )
WILLIAM A. SHERROD,             )
                                )
    Respondent.                 )

REPORT AND RECOMMENDATION

In this action, Petitioner Keith, a California prisoner appearing *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2241. Respondent has responded to the Petition and also filed a supplemental response. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

Petitioner Keith is serving a term of imprisonment entered in the State of California. The State of California Department of Corrections and Rehabilitation ("CDCR"), which has custody of Petitioner under his California state sentence, has transferred him to North Fork Correctional Facility ("NFCF"), a private prison in Sayre, Oklahoma, pursuant to a contract between CDCR and Corrections Corporation of America, Inc.("CCA"), the corporation that owns and operates NFCF.

In his Petition filed in this Court on November 18, 2013, Petitioner asserts that he was subjected to race-based discrimination and that his due process rights were violated in a disciplinary proceeding conducted at NFCF in which he was found guilty of the misconduct of Battery on Non-Prisoner. Respondent contends that Petitioner is not entitled to habeas relief as no equal protection or due process violation occurred with respect to Petitioner's misconduct conviction.

I. Proper Respondent

Respondent Sherrod seeks dismissal of the Petition on the ground that he is not the proper respondent in this action because, as a California prisoner, Petitioner remains in the custody of CDCR. Respondent Sherrod contends that Warden Williams, as the CDCR employee responsible for California inmates confined at NFCF, is the proper respondent.[1]

Pursuant to 28 U.S.C. § 2242, the proper respondent is "the person who has custody over [the petitioner]." See 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). It appears that Respondent Sherrod is arguing that CDCR is the legal custodian of Petitioner and hence the proper respondent because only CDCR has the authority to shorten the duration of Petitioner's sentence or release him from confinement.

However, Respondent Sherrod is the Warden of NFCF, and Warden Sherrod is the

---

[1]Respondent Sherrod has not alleged whether or not Warden Williams is physically present at NFCF or where he maintains his office.

proper respondent in this action because he is the individual with physical custody over Petitioner. See Rumsfeld v. Padilla, 542 U.S. 426, 438 (2004)(reiterating that, with certain exceptions not applicable here, "the proper respondent [in a habeas case] is the warden of the facility where the prisoner is being held"). Respondent's reliance on Rule 2(a) of the Rules Governing Section 2254 Cases is misplaced. This is a 28 U.S.C. § 2241 action, not an action by a state prisoner challenging the validity of a state court judgment. Respondent cites a Ninth Circuit Court of Appeals decision, Smith v. Idaho, 392 F.3d 350, 355 n. 3 (9th Cir. 2004), for the proposition that the proper respondent must have the power or authority to provide the relief to which the petitioner is entitled. The Smith decision has no precedential value in this circuit, and Respondent has not cited any authority from this circuit. Moreover, the Smith decision involved a § 2254 habeas litigant.

In Dunn v. United States Parole Comm'n, 818 F.2d 742, 744 (10th Cir. 1987), the Tenth Circuit Court of Appeals held that when a petitioner challenges a decision of the United States Parole Commission establishing a presumptive parole date the Commission is the prisoner's "de facto" custodian and is therefore the proper respondent. However, this holding has not been extended beyond cases involving Parole Commission actions. Additionally, the Tenth Circuit has noted in an unpublished decision that after the Supreme Court's decision in Padilla the proper-respondent holding in Dunn may no longer be good law and that the warden of the prison where the prisoner is confined is the proper respondent. Von Kahl v. United States, 321 Fed. Appx. 724, 727 (10th Cir. 2009)(unpublished op.). In any event, Respondent Sherrod has responded to the Petition,

3

and his request for dismissal of the Petition on this ground should be denied.

II. Relevant Facts

The record shows that while confined at NFCF Petitioner was charged with the State of California rules violation of Battery on Non-Prisoner on October 30, 2012. Response, Ex. 1 at 2. The reporting employee, Officer Swigart, alleged in the misconduct report that at approximately 2:53 p.m. on that day he was "monitoring a mass movement of inmates returning to their assigned housing from recreation on the Expansion Walkway." Id.

> While standing in the middle of the walkway, directing inmate movement . . ., I turned my head in a counterclockwise motion as to continue to direct the inmates walking by. Simultaneously, inmate KEITH . . . struck my left arm with his left arm, resulting in my facility-issued radio to fall out of my hands to the ground. KEITH then returned to his assigned housing. I informed my supervisor of the incident. KEITH was escorted to medical to receive a medical and pre-segregation evaluation. Upon being cleared by medical, KEITH was subsequently rehoused in Administrative Segregation.

Id. An investigation was conducted concerning the misconduct charge, and Petitioner was provided a copy of the investigation report prior to the disciplinary hearing.

In a disciplinary proceeding conducted on November 19, 2012, Petitioner entered a plea of not guilty and requested that a videotape of the alleged incident be reviewed. The disciplinary hearing officer ("DHO") explained in the report that Petitioner's request was denied because "due to the location of the incident there [was] no video available to review." Response, Ex. 1 at 5.

During the hearing, the DHO posed questions to Officer Swigart and recorded his

responses in the report. Petitioner was found guilty of the misconduct, and the DHO provided multiple reasons for the guilty finding, including Officer's Swigart's statements during the hearing. Punishment for the misconduct conviction was imposed, including the removal of 150 days of behavioral credits from Petitioner's sentence calculation.

III. Hybrid Habeas/Civil Rights Claim of Violation of Equal Protection Guarantees

Petitioner first contends that the misconduct charge was the result of race-based discrimination and discrimination based on Petitioner's "size." Petition, at 6. The only factual support for this claim is Petitioner's assertion that the same correctional official had charged him with a misconduct two weeks before the officer charged Petitioner with the Battery misconduct.

It is well established that prison officials cannot discriminate on the basis of age, race, or handicap in the provision of privileges. Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). However, Plaintiff fails to indicate his race. "Proof of racially discriminatory intent or purpose is required to demonstrate a race-based violation of the Equal Protection Clause." Villanueva v. Carere, 85 F.3d 481, 485 (10th Cir. 1996). "The discriminatory purpose need not be the only purpose, but it must be a 'motivating factor in the decision.'" Id. (quoting Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265-266 (1977)). Petitioner's assertion that either his race or his "size" prompted the officer to charge him with a misconduct is conclusory and unsupported by any facts from which to infer a discriminatory intent by the reporting officer. Petitioner is not entitled to habeas or other civil relief concerning this claim.

5

IV. Due Process in Disciplinary Proceeding

Petitioner contends that he was denied due process in the disciplinary proceeding conducted at NFCF. He contends that there was insufficient evidence to support the misconduct conviction and that a videotape of the incident was not provided to him to use in his defense.

It is well-established that "an inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991)(quoting Ponte v. Real, 471 U.S. 491, 495 (1985)). However, because prison disciplinary proceedings "are not part of a criminal prosecution," inmates are not entitled to the full extent of the due process rights afforded to defendants in criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

When administrative privileges such as the earned credits are forfeited in disciplinary proceedings, due process requires that the inmate receive "(1) advance written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to present witnesses and documentary evidence in his defense, and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1984)(citing Wolff, 418 U.S. 563-567).

Due process is satisfied if the misconduct conviction is also supported by "some evidence" in the record. Id. A review of institutional disciplinary proceedings based on this

6

standard does not require "examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." Id. at 455. Rather, the issue is simply "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-456. Thus, this Court's review of Petitioner's institutional disciplinary proceeding is "limited to whether the three steps mandated by Wolff were followed and whether there was some evidence to support the disciplinary [hearing officer's] findings." Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996).

A. Sufficiency of the Evidence to Support the Misconduct Conviction

Petitioner contends that insufficient evidence was presented to support the misconduct conviction. In support of this claim, Petitioner asserts that (1) there were more than 40 inmates present at the scene of the incident; (2) he was not transferred to the administrative segregation unit until 2½ hours after the incident; (3) Officer Swigart did not call for assistance or suspend programs at the prison after the incident; and (4) there were no injuries.

Petitioner asserted this due process claim in his administrative appeal of the misconduct decision. Petition, Ex. 1. His request for relief from the misconduct and punishment imposed for the misconduct was denied at all levels of administrative review. Respondent contends that Petitioner was provided due process in the disciplinary proceeding and that "some evidence" was shown to support the misconduct conviction.

The DHO stated in the disciplinary hearing report that Officer Swigart was asked during the hearing how he identified Petitioner as the individual who committed the misconduct offense. Officer Swigart stated that he identified Petitioner as the individual who

7

was responsible because "I felt the sensation of him knocking the radio out of my hand, and when I looked up he was the closest and he was just walking away." Response, Ex. 1, at 4. Officer Swigart stated that Petitioner purposely knocked the radio out of the officer's hand and that it was "[a]bsolutely not" an accident. Id. at 5. Even if other inmates were present at the time of the incident, Officer Swigart's statement provided "some evidence" to support the finding of guilt for the Battery misconduct offense.

Officer Swigart also provided a reasonable explanation for his failure to call for assistance or immediately transfer Petitioner to the prison's administrative segregation unit. When asked why he did not "call a code" when the incident occurred, officer Swigart stated that he did not want the situation to escalate because a number of inmates were present. Id. at 4.

Even assuming the truth of Petitioner's assertion that no injuries resulted from the incident, this detail does not alter the fact that "some evidence" supported the misconduct conviction. Petitioner was allowed to present his arguments in his defense during the disciplinary hearing. Officer Swigart's statements in the misconduct offense report and during the hearing provided "some evidence" to support the finding of guilt, and Petitioner has not demonstrated in this claim that he was denied due process in the disciplinary proceeding. Petitioner is not entitled to habeas relief concerning this claim.

B. Exclusion of Videotape Evidence

Petitioner asserts that "there are cameras that cover the whole area" where the incident occurred and that he was told by two officers, Mr. Perez and Mr. Weir, that they had "seen

8

the videotape" of the incident, but Petitioner was denied access to the videotape to use in his defense.

In Wolff, the Supreme Court held that an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. "[P]rison officials are required to consider a request for documentary evidence on an individualized basis." Howard v. United States Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007).

During the hearing, Petitioner requested that the DHO review the videotape he alleged would have supported his defense that he was not guilty of the misconduct offense. The DHO stated in the report of the hearing that "due to the location of the incident there [was] no video available to review." Response, Ex. 1 at 5.

In a supplemental response addressing Petitioner's allegation that a videotape of the incident existed but was not provided to him Respondent has provided the affidavits of two NFCF officials, Assistant Warden Perez and Captain Wehr. Both officials aver that they did not inform Petitioner that a videotape of the incident existed and that no such videotape exists. Both officials aver that although there are a number of security cameras at NFCF "there is not one hundred percent coverage" of all areas of the prison at all times. Supplemental Response, Ex. 1, Ex. 2.

Captain Wehr avers that during an administrative review he conducted of Petitioner's placement in administrative segregation he did inform Petitioner that "if there was a video

9

of the incident and <u>if</u> it showed his recollection of the incident to be correct, he would be found not guilty at a disciplinary hearing . . . I did tell inmate Keith I would look at the video surveillance system." Supplemental Response, Ex. 2. Captain Wehr avers that following this administrative interview he looked at the video surveillance system coverage for that date and time and location and discovered that "[d]ue to the location of the incident, there was no video coverage available for review. That information was relayed to the hearing officer and is specifically reflected on the misconduct paperwork." <u>Id.</u>

Captain Wehr's averments in his affidavit are consistent with the DHO's statement that no videotape of the incident existed. Petitioner could not have been prejudiced by the failure of prison officials to produce the videotape when no such videotape existed. In <u>Howard</u>, 487 F.3d at 814-15, the Tenth Circuit Court of Appeals held that a prisoner had successfully alleged that the disciplinary hearing officer's refusal to produce and review a videotape of an incident prejudiced him based on his allegation that the tape would show he acted in self-defense. The decision in <u>Howard</u> is distinguishable, however, because in that case the Bureau of Prisons argued that producing a "possible" videotape would have provided only cumulative evidence because prison staff are obligated to tell the truth in disciplinary proceedings. <u>Id.</u> at 814. In this case, in the absence of any evidence that any videotape of the incident existed, Petitioner cannot show prejudice as a result of the failure of prison officials to provide him a copy of the videotape or consider it at the disciplinary hearing. Petitioner is not entitled to habeas relief with respect to this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by     April 24th    , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    4th    day of    April    , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE